**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

| | |
|---|---|
| **JAMES PRATT**, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**CONSUMER SAFETY TECHNOLOGY, LLC D/B/A INTOXALOCK,**<br><br>Defendant. | No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

James Pratt ("Plaintiff"), through his attorneys, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant Consumer Safety Technology, LLC d/b/a Intoxalock ("Intoxalock" or "Defendant"), and its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities. Plaintiff alleges the following on information and belief—except as to his own actions, counsel's investigations, and facts of public record.

**NATURE OF ACTION**

1.  This class action arises from Defendant's failure to protect its computer systems.

2.  Defendant manufacturers[1] and leases[2] ignition interlock devices, or car breathalyzers, which requires users to blow into the device before they are able to start their vehicles.

---

[1] *About Intoxalock*, INTOXALOCK, https://www.intoxalock.com/about (last visited Mar. 25, 2026).
[2] *Understanding Ignition Interlock Device Costs*, INTOXALOCK, https://www.intoxalock.com/ignition-interlock-cost (last visited Mar. 25, 2026).

1

3.    As such, Defendant's computer systems control the ignition interlock device installation, scheduled calibration, Interlock Mobile App, consumer accounts and other services that it offers to its consumers. But Defendant lost control over those products and services when cybercriminals infiltrated its insufficiently protected computer systems in a data breach (the "Data Breach").

4.    It is unknown for precisely how long the cybercriminals had access to Defendant's network before the breach was discovered. In other words, Defendant had no effective means to prevent, detect, stop, or mitigate breaches of its systems—thereby allowing cybercriminals to disrupt consumers' access to Defendant's ignition interlock device products and services for eight days.

5.    On information and belief, cybercriminals were able to breach Defendant's systems because Defendant failed to adequately train its employees on cybersecurity and failed to maintain reasonable security safeguards or protocols to protect the Class. In short, Defendant's failures placed the Class in a vulnerable position—rendering them easy targets for cybercriminals.

6.    Plaintiff is a Data Breach victim, having received a breach notice—attached as Exhibit A. He brings this class action on behalf of himself, and all others harmed by Defendant's misconduct.

**PARTIES**

7.    Plaintiff, James Pratt, is a natural person and a citizen of Illinois where he intends to remain.

8.    Defendant, Consumer Safety Technology, LLC d/b/a Intoxalock, is a limited liability company organized in Delaware and with its principal place of business at 11035 Aurora Avenue, Building 1, Urbandale, Iowa.

**JURISDICTION AND VENUE**

9.      This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Plaintiff and Defendant are citizens of different states. [3] And there are over 100 putative Class Members.

10.     This Court has personal jurisdiction over Defendant because it is headquartered in Iowa, regularly conducts business in and has sufficient minimum contacts in Iowa.

11.     Venue is proper in this Court because Defendant's principal office is in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

**BACKGROUND**

*Intoxalock*

12.     Defendant manufacturers[4] and leases[5] ignition interlock devices that require users to blow into the device before they are able to start their vehicles.

13.     Defendant's ignition interlock devices meet state requirements in 46 states across the nation, and its alcohol monitoring products are used in all 50 states[6] and serves more than 150,000 customers annually.[7]

---

[3] Under the Class Action Fairness Act, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10). Thus, as an LLC, Defendant Intoxalock is a citizen of Delaware (state of formation) and Iowa (principal place of business).

[4] *About Intoxalock*, INTOXALOCK, https://www.intoxalock.com/about (last visited Mar. 25, 2026).

[5] *Understanding Ignition Interlock Device Costs*, INTOXALOCK, https://www.intoxalock.com/ignition-interlock-cost (last visited Mar. 25, 2026).

[6] *About Intoxalock*, INTOXALOCK, https://www.intoxalock.com/about (last visited Mar. 25, 2026).

[7] Stefanie Schappert, *Intoxalock restores service after hack left drivers unable to start cars across 46 states*, CYBERNEWS, (Mar. 20, 2026), https://cybernews.com/news/intoxalock-hack-breathalyzer-devices-cars-wont-start-us/

14. As part of its business, Defendant provides installation, calibration and interlock device services to thousands of its consumers.

15. In providing interlock device products and services, Defendant agreed it would safeguard its computer systems and data in accordance with its internal policies, state law, and federal law.

16. Under state and federal law, businesses like Defendant have duties to protect its consumers and to notify them about breaches.

17. Defendant recognizes these duties, declaring in its "Privacy Policy" that:

    a. "We implement a variety of security measures to protect the safety of your personal information when you enter, submit, or access your personal information."[8]

    b. "We take reasonable measures to protect the information you submit via our Services against loss, theft and unauthorized use, disclosure, or modification"[9]

    c. "We use Sensitive Information for necessary or reasonably expected purposes – specifically, to fulfill purchases, allow account logins, comply with our legal obligations including state IID requirements, and as authorized by law."[10]

***Defendant's Data Breach***

---

[8] *Privacy Notice*, Intoxalock, https://www.intoxalock.com/privacy-policy (last visited Mar. 25, 2026).
[9] *Id*.
[10] *Id*.

18.     On or around March 14, 2026, Defendant was hacked in the Data Breach[11] leaving many of its consumers unable to use its ignition interlock device products to start their vehicles.[12]

19.     In total, Defendant injured at least 150,000 persons—via the halt in their ignition interlock device services and violation of its promise to provide these services—in the Data Breach.[13] Upon information and belief, these 150,000 persons include its consumers.

20.     Defendant failed its duties and its contractual obligations when its inadequate security practices caused the Data Breach. In other words, Defendant's negligence and breach of contract is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing its computer systems and ignition interlock device monitoring platform. And thus, Defendant caused widespread injury and monetary damages.

21.     Since the breach, Defendant claims that "[w]hile our investigation is ongoing, we have taken immediate steps to secure our network."[14]

22.     But such simple declarations are insufficient to ensure that Plaintiff's and Class Members will be protected from additional service disruptions in a subsequent data breach.

23.     Defendant has done little to remedy its Data Breach which is wholly insufficient to compensate Plaintiff and Class Members for the injuries that Defendant inflicted upon them.

---

[11] *Intoxalock Status Center*, INTOXALOCK, https://learn.intoxalock.com/status?fbclid=IwY2xjawQqstJleHRuA2FlbQIxMABicmlkETFXUk pvV2FaNUlQMkY3YnQ0c3J0YwZhcHBfaWQQMjIyMDM5MTc4ODIwMDg5MgABHkiE1_ oQRSHq58GvieLF59fcERJq9JG0lwbOsOFAGPs1C0-tSer-dQyYhYCl_aem_NgrVUuzQZ1zWCzluV2O8wg (last visited Mar. 25, 2026).
[12] Stefanie Schappert, *Intoxalock restores service after hack left drivers unable to start cars across 46 states*, CYBERNEWS, (Mar. 20, 2026), https://cybernews.com/news/intoxalock-hack-breathalyzer-devices-cars-wont-start-us/
[13] *Id.*
[14] *See* Exhibit A.

24. Because of Defendant's Data Breach, its computer systems were placed into the hands of cybercriminals—inflicting numerous injuries and significant damages upon Plaintiff and Class Members.

*Plaintiff's Experiences and Injuries*

25. Plaintiff James Pratt is a current customer of Defendant.

26. Thus, Plaintiff uses Defendant's ignition interlock device through its mobile app.

27. As a result, Plaintiff was injured by Defendant's Data Breach.

28. Plaintiff trusted Defendant would use reasonable measures to protect its computer systems from unauthorized access and disclosure according to Defendant's internal policies, as well as state and federal law.

29. Plaintiff reasonably understood that a portion of the funds paid to Defendant would be used to pay for adequate cybersecurity and protection and that Defendant had promised, either expressly or impliedly, to do so and to provide an operational product.

30. Plaintiff received a Notice of Data Breach dated March 16, 2026.

31. Plaintiff has *already* suffered from Defendant's Data Breach—whereby he was not able to log into his Intoxalock mobile smartphone app for 8 days.

32. Despite Defendant informing Plaintiff and Class Members that they would not be charged service fees for the 8 days that the systems were down[15] he was charged the full service fee for all 8 days.

---

[15] *Intoxalock Status Center*, INTOXALOCK, https://learn.intoxalock.com/status?fbclid=IwY2xjawQqstJleHRuA2FlbQIxMABicmlkETFXUk pvV2FaNUlQMkY3YnQ0c3J0YwZhcHBfaWQQMjIyMDM5MTc4ODIwMDg5MgABHkiE1_ oQRSHq58GvieLF59fcERJq9JG0lwbOsOFAGPs1C0-tSer- dQyYhYCl_aem_NgrVUuzQZ1zWCzluV2O8wg (last visited Mar. 25, 2026).

33. Plaintiff has spent—and will continue to spend—significant time and effort monitoring his access to his Intoxalock ignition interlock device and financial accounts to protect himself after the Data Breach.

34. Because of Defendant's Data Breach, Plaintiff has suffered—and will continue to suffer from—anxiety, sleep disruption, stress, fear, and frustration. Such injuries go far beyond allegations of mere worry or inconvenience. Rather, Plaintiff's injuries are precisely the type of injuries that the law contemplates and addresses.

35. Because of the Data Breach, Plaintiff anticipates spending considerable amounts of time and money to try and mitigate his injuries.

36. Today, Plaintiff has a continuing interest in ensuring that his Intoxalock mobile app and ignition interlock device—which remain controlled by Defendant's computer systems—is protected and safeguarded from additional breaches.

***Consumers Prioritize Data Security***

37. In 2024, the technology and communications conglomerate Cisco published the results of its multi-year "Consumer Privacy Survey."[16] Therein, Cisco reported the following:

> a. "For the past six years, Cisco has been tracking consumer trends across the privacy landscape. During this period, privacy has evolved from relative obscurity to a customer requirement with more than 75% of consumer respondents saying they won't purchase from an organization they don't trust with their data."[17]

---

[16] *Privacy Awareness: Consumers Taking Charge to Protect Personal*, CISCO, https://www.cisco.com/c/dam/en_us/about/doing_business/trust-center/docs/cisco-consumer-privacy-report-2024.pdf (last visited March 19, 2025).
[17] *Id*. at 3.

b.      "Privacy has become a critical element and enabler of customer trust, with 94% of organizations saying their customers would not buy from them if they did not protect data properly."[18]

c.      89% of consumers stated that "I care about data privacy."[19]

d.      83% of consumers declared that "I am willing to spend time and money to protect data" and that "I expect to pay more" for privacy.[20]

e.      51% of consumers revealed that "I have switched companies or providers over their data policies or data-sharing practices."[21]

f.      75% of consumers stated that "I will not purchase from organizations I don't trust with my data."[22]

***Plaintiff and the Proposed Class Suffered Common Injuries and Damages***

38.    Because of Defendant's failure to prevent the Data Breach, Plaintiff and Class Members suffered—and will continue to suffer—damages. These damages include, *inter alia*, monetary losses, lost time, anxiety, and emotional distress. Also, they suffered or are at an increased risk of suffering:

a.      disruption in installation, calibration and access to their Intoxalock services;

b.      disruption in use of their vehicles;

c.      out-of-pocket costs from mitigating disruption of Intoxalock services and use of their vehicles;

---

[18] *Id.*
[19] *Id.* at 9.
[20] *Id.*
[21] *Id.*
[22] *Id.* at 11.

      d.      lost opportunity costs and wages from spending time trying to mitigate the fallout of the Data Breach;

      e.      fees paid to Defendant for services that were disrupted during the Data Breach; and

      f.      continued risk of interruption of Interlock services—which remains in Defendant's control—and is thus at risk for futures breaches so long as Defendant fails to take appropriate measures to protect its computer systems.

***Defendant Knew—Or Should Have Known—of the Risk of a Data Breach***

39.      Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in recent years.

40.      In 2024, a record 3,158 data breaches occurred—exposing approximately 1,350,835,988 sensitive records (i.e., 211% increase year over year).[23]

41.      Indeed, cyberattacks have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service issue warnings to potential targets, so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive to ransomware criminals . . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[24]

42.      Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including Defendant.

---

[23] *2024 Data Breach Report*, IDENTITY THEFT RESOURCE CENTER (Jan. 2025), https://www.idtheftcenter.org/wp-content/uploads/2025/02/ITRC_2024DataBreachReport.pdf.

[24] Ben Kochman, *FBI, Secret Service Warn of Targeted Ransomware*, LAW360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware.

*Defendant Could Have Prevented the Data Breach*

43.    Data breaches are preventable.[25] Indeed, the American Bar Association published a treatise titled the *Data Breach and Encryption Handbook* wherein the author explained that:

    a.    "In almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions."[26]

    b.    "Organizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised[.]"[27]

    c.    "Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures . . . . Appropriate information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a data breach never occurs." [28]

*Defendant Failed to Follow FTC Guidelines*

44.    According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making.  Thus, the FTC issued numerous guidelines identifying best data security practices that businesses—like Defendant—should use to protect against unlawful data exposure.

---

[25] Lucy L. Thomson, *Despite the Alarming Trends, Data Breaches Are Preventable*, DATA BREACH AND ENCRYPTION HANDBOOK (2012).
[26] *Id.* at 17.
[27] *Id.* at 28.
[28] *Id.*

45. In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*. There, the FTC set guidelines for what data security principles and practices businesses must use.[29] The FTC declared that, *inter alia*, businesses must:

   a.  protect the personal customer information that they keep;

   b.  properly dispose of personal information that is no longer needed;

   c.  encrypt information stored on computer networks;

   d.  understand their network's vulnerabilities; and

   e.  implement policies to correct security problems.

46. The guidelines also recommend that businesses watch for the transmission of large amounts of data out of the system—and then have a response plan ready for such a breach.

47. Furthermore, the FTC explains that companies must:

   a.  not maintain information longer than is needed to authorize a transaction;

   b.  limit access to sensitive data;

   c.  require complex passwords to be used on networks;

   d.  use industry-tested methods for security;

   e.  monitor for suspicious activity on the network; and

   f.  verify that third-party service providers use reasonable security measures.

48. The FTC brings enforcement actions against businesses for failing to protect customer data adequately and reasonably. Thus, the FTC treats the failure—to use reasonable and appropriate measures to protect against unauthorized access to confidential consumer data—as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15

---

[29] *Protecting Personal Information: A Guide for Business,* FED TRADE COMMISSION (Oct. 2016) https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

49.     In short, Defendant's failure to use reasonable and appropriate measures to protect against unauthorized access to its current and former consumers' data constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendant Failed to Follow Industry Standards***

50.     Several best practices have been identified that—at a *minimum*—should be implemented by businesses like Defendant. These industry standards include: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption (making data unreadable without a key); multi-factor authentication; backup data; and limiting which employees can access sensitive data.

51.     Other industry standard best practices include: installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

52.     Upon information and belief, Defendant failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR.DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04) and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

53.     These frameworks are applicable and accepted industry standards. And by failing to comply with these accepted standards, Defendant opened the door to the criminals—thereby causing the Data Breach.

## CLASS ACTION ALLEGATIONS

54.     Plaintiff brings this class action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of all members of the following class:

> All individuals residing in the United States whose ignition interlock device service was compromised in the Data Breach discovered by Intoxalock in March 2026, including all those individuals who received notice of the breach.

55.     Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

56.     Plaintiff reserves the right to amend the class definition.

57.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

58.     Ascertainability. All members of the proposed Class are readily ascertainable from information in Defendant's custody and control. After all, Defendant already identified some individuals and sent them data breach notices.

59.     Numerosity. The Class Members are so numerous that joinder of all Class Members is impracticable. Upon information and belief, the proposed Class includes at least 150,000 members.

60.     Typicality. Plaintiff's claims are typical of Class Members' claims as each arises from the same Data Breach, and the same alleged violations by Defendant.

61.     Adequacy. Plaintiff will fairly and adequately protect the proposed Class's common interests. His interests do not conflict with Class Members' interests. And Plaintiff has retained counsel—including lead counsel—that is experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf.

62.     Commonality and Predominance. Plaintiff's and the Class's claims raise predominantly common fact and legal questions—which predominate over any questions affecting individual Class Members—for which a class wide proceeding can answer for all Class Members. In fact, a class wide proceeding is necessary to answer the following questions:

a.      if Defendant had a duty to use reasonable care in safeguarding its computer systems and ignition interlock device monitoring platform;

b.      if Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c.      if Defendant was negligent in maintaining, protecting, and securing its computer systems and ignition interlock device monitoring platform;

d.      if Defendant breached contract promises to Plaintiff and the Class's;

e.      if Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

f.      if the Data Breach caused Plaintiff and the Class injuries;

g.      what the proper damages measure is; and

h. if Plaintiff and the Class are entitled to damages, treble damages, and or injunctive relief.

63. Superiority. A class action will provide substantial benefits and is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class Members are relatively small compared to the burden and expense that individual litigation against Defendant would require. Thus, it would be practically impossible for Class Members, on an individual basis, to obtain effective redress for their injuries. Not only would individualized litigation increase the delay and expense to all parties and the courts, but individualized litigation would also create the danger of inconsistent or contradictory judgments arising from the same set of facts. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale, provides comprehensive supervision by a single court, and presents no unusual management difficulties.

**FIRST CAUSE OF ACTION**
**Negligence**
**(On Behalf of Plaintiff and the Class)**

64. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

65. Plaintiff and the Class entrusted Defendant to grant access to its ignition interlock device product and services on the premise and with the understanding that Defendant would safeguard its computer systems and not allow access to unauthorized third parties.

66. Defendant owed a duty of care to Plaintiff and Class Members because it was foreseeable that Defendant's failure—to use adequate data security in accordance with industry standards for data security—would compromise its computer systems and ignition interlock device monitoring platform in a data breach. And here, that foreseeable danger came to pass.

67. Defendant has full knowledge of the types of harm that Plaintiff and the Class could and would suffer if their ignition interlock device products and services were to be unavailable to Plaintiff and the Class, including the inability to operate their vehicles.

68. Defendant owed these duties to Plaintiff and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security practices.

69. Defendant owed—to Plaintiff and Class Members—at least the following duties to:

a. exercise reasonable care in protecting its computer systems and access to ignition interlock device products and services;

b. implement industry-standard security procedures sufficient to reasonably protect its computer systems from a data breach, and unauthorized access to its ignition interlock device monitoring platform;

c. promptly detect attempts at unauthorized access;

70. Thus, Defendant owed a duty to timely and accurately disclose to Plaintiff and Class Members the scope, nature, and occurrence of the Data Breach. After all, this duty is required and necessary for Plaintiff and Class Members to take appropriate measures to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

71. Defendant knew or reasonably should have known that the failure to exercise due care in operating the ignition interlock device monitoring platform that controlled Plaintiff's and the Class's ability to operate their vehicles involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the criminal acts of a third party.

72.     Defendant's duty to use reasonable security measures arose because of the special relationship that existed between Defendant and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class entrusted Defendant with their ability to access the ignition interlock device and operate their vehicles, a necessary part of obtaining services from Defendant.

73.     The risk that unauthorized persons would attempt to gain access to Defendant's computer systems and misuse it was foreseeable.

74.     Defendant knew, or should have known, the risk in using its computer systems to control Plaintiff and Class Member's access to its ignition interlock device product and services and the importance of exercising reasonable care in safeguarding its monitoring platform.

75.     Defendant improperly and inadequately safeguarded the ignition interlock device monitoring platform used by Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

76.     Defendant breached these duties as evidenced by the Data Breach.

77.     Defendant acted with wanton and reckless disregard for the safety and security of Plaintiff and Class Members by:

    a.     providing access to its computer systems to third parties and

    b.     failing to properly supervise both the way its ignition interlock device monitoring platform was stored and used, and those in its employ who were responsible for making that happen.

78.     Defendant breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the ignition interlock device monitoring platform used by Plaintiff and Class Members which actually and proximately caused the Data Breach and Plaintiff and Class Members' injury.

17

79. Defendant has admitted that unauthorized third persons access its computer systems and Plaintiff and the Class were wrongfully denied access to its product and services because of the Data Breach.

80. As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiff and Class Members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

81. Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiff and Class Members actual, tangible, injury-in-fact and damages, including, monetary losses, lost time, anxiety, and emotional distress, lost benefit of their bargain, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

## SECOND CAUSE OF ACTION
### Negligence *per se*
### (On Behalf of Plaintiff and the Class)

82. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

83. Under the FTC Act, 15 U.S.C. § 45, Defendant had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiff and Class Members.

84. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect consumers ability to use its products and services.

85.     Defendant breached its respective duties to Plaintiff and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard the Intoxalock monitoring platform used by Plaintiff and Class Members.

86.     Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect its computer systems and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature of the safety and security Defendant's monitoring platform ensured and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

87.     The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and members of the Class.

88.     But for Defendant's wrongful and negligent breach of its duties owed, Plaintiff and Class Members would not have been injured.

89.     The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's breach of their duties. Defendant knew or should have known that Defendant was failing to meet its duties and that its breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the interruption in service of its monitoring platform.

90.     Defendant's various violations and its failure to comply with applicable laws and regulations constitutes negligence *per se*.

91.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and Class Members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

**THIRD CAUSE OF ACTION**
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

92.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

93.    Plaintiff and Class Members paid fees to Defendant as a condition of receiving Defendant's ignition interlock device and services.

94.    Plaintiff and Class Members reasonably understood that a portion of the funds they paid would be used to pay for adequate cybersecurity measures.

95.    Plaintiff and Class Members reasonably understood that Defendant would use adequate cybersecurity measures to protect the ignition interlock device monitoring platform they relied on to operate their vehicles based on Defendant's duties under state and federal law and its internal policies.

96.    Plaintiff and the Class Members accepted Defendant's offers by paying fees to Defendant in exchange for ignition interlock device and services.

97.    In turn, and through internal policies, Defendant agreed to protect and not disclose its computer systems and ignition interlock device monitoring platform to unauthorized persons.

98.    Plaintiff and the Class fully performed their obligations under the implied contracts with Defendant.

99.    The covenant of good faith and fair dealing is an element of every contract. Thus, parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—and not merely the letter—of the bargain.

In short, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

100.   Subterfuge and evasion violate the duty of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or consist of inaction. And fair dealing may require more than honesty.

101.   Defendant materially breached the contracts it entered with Plaintiff and Class Members by:

   a.   failing to safeguard its computer systems;

   b.   failing to comply with industry standards;

   c.   failing to comply with the legal obligations necessarily incorporated into the agreements; and

   d.   failing to ensure the integrity of ignition interlock device monitoring platform that Defendant created, maintained, and transmitted.

102.   In these and other ways, Defendant violated its duty of good faith and fair dealing.

103.   Defendant's material breaches were the direct and proximate cause of Plaintiff's and Class Members' injuries (as detailed *supra*).

104.   Plaintiff and Class Members performed as required under the relevant agreements, or such performance was waived by Defendant's conduct.

### FOURTH CAUSE OF ACTION
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

105.   Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

106.   This claim is pleaded in the alternative to the breach of implied contract claim.

107.    Plaintiff and Class Members conferred a benefit upon Defendant. After all, Defendant benefitted from accepting payment.

108.    Defendant appreciated or had knowledge of the benefits it received from Plaintiff and Class Members.

109.    Plaintiff and Class Members reasonably understood that Defendant would use adequate cybersecurity measures to protect the ignition interlock device monitoring platform they relied on to operate their vehicles based on Defendant's duties under state and federal law and its internal policies.

110.    Defendant enriched itself by saving the costs they reasonably should have expended on data security measures to secure the ignition interlock device and services used by Plaintiff's and Class Members.

111.    Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant instead calculated to avoid its data security obligations at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

112.    Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff's and Class Members' payment because Defendant failed to adequately protect their ability to access its ignition interlock device and services.

113.    Plaintiff and Class Members have no adequate remedy at law.

114.    Defendant should be compelled to disgorge into a common fund—for the benefit of Plaintiff and Class Members—all unlawful or inequitable proceeds that it received because of its misconduct.

**FIFTH CAUSE OF ACTION**
**Violation of the Iowa Consumer Fraud Act ("ICFA")**
**Iowa Code §§ 714h.3, 714h.5**
**(On Behalf of Plaintiff and the Class)**

115. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

116. The ICFA prohibits a person or entity from engaging:

… in a practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement [and/or] sale[.]

Iowa Code § 714H.3(1).

117. The Iowa Code defines an unfair practice as "an act or practice which causes.

118. substantial, unavoidable injury to consumer that is not outweighed by any consumer or competitive benefits which the practice produces." Iowa Code § 714.16(1)(n).

119. The Iowa Code defines an unfair practice as "an act or practice which causes substantial, unavoidable injury to consumer that is not outweighed by any consumer or competitive benefits which the practice produces." Iowa Code § 714.16(1)(n).

120. Defendant engaged in the conduct alleged in this Complaint through transactions in and involving trade and commerce.

121. While involved in trade or commerce, Defendant violated the ICFA, by engaging in unfair, deceptive, and unconscionable business practices including, among other things, by:

    a.    Failing to implement and maintain appropriate and reasonable security procedures and practices to safeguard and protect its computer systems from unauthorized access and preventing its current and former

customers, Plaintiff and the Class Members from accessing its Intoxalock product and services; and

b.    Failing to disclose the material fact that its computer systems and data security practices were inadequate to safeguard and protect its computer systems and Intoxalock monitoring platform used by Defendant's current and former customers from being compromised, unauthorizedly disclosed, stolen, lost, or misused.

122.    Defendant knew or should have known that its computer systems and data security practices were inadequate to safeguard Plaintiff's and Class Members' access to its ignition interlock device and services, and that risk of a data breach or theft was highly likely.

123.    Defendant should have disclosed this information because Defendant was in a superior position to know the true facts related to its defective data security.

124.    Defendant's failures constitute an unfair practice and false, deceptive, and misleading representations regarding the security of its network.

125.    These unfair practices and misleading representations upon which impacted individuals (including Plaintiff and the Class Members) relied were material facts (e.g., as to Defendant's adequate protection of the ignition interlock device monitoring platform), and consumers (including Plaintiff and Class Members) relied on those representations to their detriment.

126.    In committing the acts alleged above, Defendant engaged in fraudulent, deceptive, and unfair practices by omitting, failing to disclose, or inadequately disclosing to Defendant's current and former customers that it did not follow industry best practices for implementing cybersecurity to its computer systems.

127.    As a direct and proximate result of Defendant's fraudulent, deceptive, and unfair practices and omissions, Plaintiff and Class Members were unable to access Defendant's ignition interlock device monitoring platform, causing and which will continue to cause them damages.

128.    As a direct and proximate result of Defendant's conduct, Plaintiff and the Class Members have suffered injury and damages as set forth herein, including actual pecuniary/monetary damages, disruption in installation, calibration and access to their Intoxalock services; disruption in use of their vehicles; out-of-pocket costs from mitigating disruption of Intoxalock services and use of their vehicles; lost opportunity costs and wages from spending time trying to mitigate the fallout of the Data Breach; fees paid to Defendant for services that were disrupted during the Data Breach; and are entitled to actual damages as allowed by Iowa Code § 714H.5(1), as well as reasonable attorneys' fees. monetary losses, lost time, anxiety, and emotional distress.

129.    Further under Iowa Code § 714H.5(1), Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to (i) strengthen their data security systems and monitoring procedures; and (ii) submit to future annual audits of those systems and monitoring procedures.

**SIXTH CAUSE OF ACTION**
**Declaratory Judgment**
**(On Behalf of Plaintiff and the Class)**

130.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

131.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq*., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. The Court has broad authority to restrain acts, such as those alleged herein, which are tortious and unlawful.

132. In the fallout of the Data Breach, an actual controversy has arisen about Defendant's various duties to use reasonable data security. On information and belief, Plaintiff alleges that Defendant's actions were—and *still* are—inadequate and unreasonable. And Plaintiff and Class Members continue to suffer injury from the ongoing threat of another Data Breach and interruption of Defendant's products and services.

133. Given its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a. Defendant owed—and continues to owe—a legal duty to use reasonable data security to secure its computer systems and monitoring platforms;

b. Defendant has a duty to notify impacted individuals of the Data Breach under the common law and Section 5 of the FTC Act;

c. Defendant breached, and continues to breach, its duties by failing to use reasonable measures to the data entrusted to it; and

d. Defendant breaches of its duties caused—and continues to cause—injuries to Plaintiff and Class Members.

134. The Court should also issue corresponding injunctive relief requiring Defendant to use adequate security consistent with industry standards to protect the data entrusted to it.

135. If an injunction is not issued, Plaintiff and the Class will suffer irreparable injury and lack an adequate legal remedy if Defendant experiences a second data breach.

136. And if a second breach occurs, Plaintiff and the Class will lack an adequate remedy at law because many of the resulting injuries are not readily quantified in full and they will be forced to bring multiple lawsuits to rectify the same conduct. Simply put, monetary damages—

while warranted for out-of-pocket damages and other legally quantifiable and provable damages—cannot cover the full extent of Plaintiff and Class Members' injuries.

137.    If an injunction is not issued, the resulting hardship to Plaintiff and Class Members far exceeds the minimal hardship that Defendant could experience if an injunction is issued.

138.    An injunction would benefit the public by preventing another data breach—thus preventing further injuries to Plaintiff, Class Members, and the public at large.

## PRAYER FOR RELIEF

Plaintiff and Class Members respectfully request judgment against Defendant and that the Court enter an order:

A.    Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing his counsel to represent the Class;

B.    Awarding declaratory and other equitable relief as necessary to protect the interests of Plaintiff and the Class;

C.    Awarding injunctive relief as necessary to protect the interests of Plaintiff and the Class;

D.    Enjoining Defendant from further unfair and/or deceptive practices;

E.    Awarding Plaintiff and the Class damages including applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F.    Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

G.    Awarding attorneys' fees and costs, as allowed by law;

H.    Awarding prejudgment and post-judgment interest, as provided by law;

I.       Granting Plaintiff and the Class leave to amend this complaint to conform to the

evidence produced at trial; and

J.       Granting other relief that this Court finds appropriate.


**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial for all claims so triable.


Date: March 31, 2026

Respectfully submitted,

**BULLOCK LAW PLLC**

 */s/ Lori A. Bullock*
Lori Bullock AT0012240
309 E 5th Street, Suite 202B
Des Moines, Iowa 50309
Telephone: (515) 423-0551
bullock@bullocklawpllc.com

**STRAUSS BORRELLI PLLC**
Raina C. Borrelli*
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
T: (872) 263-1100
F: (872) 263-1109
raina@straussborrelli.com

*Pro hac vice forthcoming*
*Attorneys for Plaintiff and Proposed Class*